# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **YVONNE L. CLIFTON o/b/o D.R.G.,** )<br>    Plaintiff    )<br>)<br>v.    )<br>)<br>**JO ANNE B. BARNHART,**    )<br>  **Commissioner of Social Security**,    )<br>    Defendant    )<br>)  | Civil Action No. 2:05cv00032<br>**REPORT AND**<br>**RECOMMENDATION**<br><br>By:  Pamela Meade Sargent<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Yvonne L. Clifton, ("Clifton"), on behalf of her son, D.R.G., filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying D.R.G.'s claim for children's supplemental security income, ("SSI"), benefits under Title XVI of the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 1381-1383d. (West 2003 & Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

Clifton filed an application for children's SSI on behalf of her son on August 15, 2002, alleging disability as of December 1, 2001, based on anxiety and migraine headaches. (Record, ("R."), at 49-51, 61, 83.) Clifton's claim was denied initially and on reconsideration. (R. at 29-32, 33, 35-37.) Clifton then requested a hearing before an administrative law judge, ("ALJ"). (R. at 38.) The hearing was held on January 13, 2004, at which she was represented by counsel. (R. at 245-78.)

By decision dated February 20, 2004, the ALJ denied Clifton's claim. (R. at 16-21.) The ALJ found that D.R.G. had never performed any substantial gainful activity. (R. at 21.) The ALJ found that the medical evidence established that D.R.G. suffered from severe impairments, namely asthma and social phobia with anxiety and panic episodes, generalized, but he found that D.R.G. did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.) The ALJ also found that the combination of medically determinable physical or mental impairments did not result in marked and severe functional limitations. (R. at 21.) Therefore, the ALJ concluded that D.R.G. was not under a disability as defined by the Act and was not eligible for children's SSI benefits. (R. at 21.) *See* 20 C.F.R. § 416.924(d)(2) (2005); *see also* 42 U.S.C.A. § 1382c(a)(3)(C) (West 2003 & Supp. 2005).

After the ALJ issued his decision, Clifton pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 6-9.) Clifton then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). The case is before this court on Clifton's motion for summary judgment filed November 18, 2005, and the Commissioner's motion for summary judgment filed January 20, 2006.

## II. Facts

During the relevant period of review, D.R.G. attended Wise County Public Schools in 1997-2001, the House of Prayer Christian School in 2001-2002 and Norton Elementary School in 2002-2004. (R. at 91-98, 197-201, 220-29.)

Clifton testified that D.R.G. was no longer in the public school system because he could not cope in large crowds. (R. at 250.) She stated that D.R.G.'s problems started in the fourth grade. (R. at 250.) Clifton testified that D.R.G. experienced severe migraine headaches daily. (R. at 254.)

Dr. Susan Bland, M.D., a medical expert, testified at Clifton's hearing. (R. at 262-64, 270-72.) She stated that D.R.G. did not suffer from an impairment severe enough to meet to equal a listed impairment. (R. at 262.) Dr. Bland stated that the medical records showed a history of upper respiratory problems and that from 1993 to 2003, D.R.G. had only four episodes of pneumonia. (R. at 262.) Dr. Bland stated that the medical records show a diagnosis of asthma; however, she noted that the medical record did not reflect the severity of problems as testified by Clifton. (R. at

262-63.) Dr. Bland testified that you would expect to see more aggressive treatment to treat someone with major headaches. (R. at 271-72.)

Thomas Schacht, Ph.D., a psychological expert, also testified at Clifton's hearing. (R. at 264-66, 274-76.) Schacht stated that D.R.G.'s intellectual functioning was above average. (R. at 264.) He stated that D.R.G. did not suffer from an impairment that met or equaled a listed impairment. (R. at 266.) He stated that the fact that D.R.G. did well in a Christian school environment indicated that D.R.G.'s problems could be responsive to environmental interventions alone. (R. at 274.) He stated that public school offered the same accommodations via special education. (R. at 274.)

It is noted that, in rendering his decision, the ALJ reviewed records from Wise County Public Schools; Norton Elementary School; House of Prayer Christian School; Lonesome Pine Pediatrics; Lonesome Pine Hospital; Dr. Gamal S. Boutros, M.D.; Dr. M. Pienkowski, M.D.; Dr. Linda R. Thompson, M.D.; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. A. M. Vedha, M.D.; and Michael Williams, L.C.S.W.

D.R.G. was treated by Lonesome Pine Pediatrics from December 1992 through December 2002 for various complaints such as cold and coughs, ear aches, pneumonia, upper respiratory infections, sinusitis, asthma and headaches. (R. at 99-147.) Clifton was advised to continue treating D.R.G.'s asthma with a nebulizer as needed. (R. at 126.) Skull and sinus x-rays were normal. (R. at 162.) In December 1995, D.R.G. was admitted to Lonesome Pine Hospital for pneumonia, bilateral otitis

media, mild dehydration and hypokalemia. (R. at 152-57.) D.R.G. was discharged two days later, his lungs demonstrated good air flow, he no longer had any wheezing or rales and his condition was "much improved." (R. at 152.) On January 18, 2001, D.R.G. was again diagnosed with pneumonia. (R. at 106.) Follow-up notes indicate that D.R.G. had improved and the pneumonia had resolved. (R. at 106.) In July 2002, D.R.G. reported poor sleep and a dysfunctional relationship with his father. (R. at 102.) Counseling was recommended. (R. at 102.) In January 2003, D.R.G. was again diagnosed with pneumonia. (R. at 178.)

In June 1997, D.R.G. saw Dr. Gamal S. Boutros, M.D., for complaints of loss of vision lasting up to three hours. (R. at 169.) Dr. Boutros diagnosed a retinal migraine and prescribed Periactin syrup. (R. at 169.) In November 1997, D.R.G. returned for a follow-up appointment. (R. at 168.) Dr. Boutros's examination revealed no neurological abnormalities. (R. at 168.) Clifton reported that she did not start D.R.G. on the Periactin syrup. (R. at 168.) Dr. Boutros diagnosed migraine variant, mostly retinal migraine and prescribed Phenegran. (R. at 168.)

In February 1998, D.R.G. saw Dr. M. Pienkowski, M.D., an allergist. (R. at 177.) Testing revealed reactions to numerous allergens. (R. at 177.) Dr. Pienkowski prescribed medications and instructed D.R.G. to avoid allergens. (R. at 177.)

School records from the House of Prayer Christian School for the school year 2001-2002 indicate that D.R.G. had an excellent rating with work habits and social traits. (R. at 221.) It was reported that D.R.G. followed directions, worked well independently, did not disturb others, took care of materials and completed his work.

(R. at 221.) It also was reported that D.R.G. was courteous, got along well with others, exhibited self-control, showed respect for authority, responded well to correction and promoted school spirit. (R. at 221.)

School records from Norton Elementary School indicate that D.R.G. was on the principal's honor roll for the school years 2002-2003 and 2003-2004. (R. at 224-27.) In February 2003, Sue C. Kennedy, D.R.G.'s teacher, completed a Teacher Questionnaire. (R. at 197-201.) Kennedy reported that D.R.G. had an unusual degree of absenteeism, indicating that he missed three weeks because of "car trouble." (R. at 197.) She reported that D.R.G. had no problems with attending and completing tasks or with moving about and manipulating objects. (R. at 198-99.)

On January 29, 2003, Michael Williams, a licensed clinical social worker, saw D.R.G. who reported a history of panic attacks with migraine headaches. (R. at 191-95.) Williams diagnosed social phobia and ruled out panic disorder. (R. at 195.) He assessed D.R.G.'s current Global Assessment of Functioning, ("GAF"), score at 55.[1] (R. at 195.) In April 2003, Williams indicated that D.R.G. had mild depression and anxiety, as well as mild obsessions/compulsions. (R. at 181.) He reported that D.R.G. was alert and oriented and that his mood was stable. (R. at 181.) No functional limitations were noted. (R. at 181.) On January 12, 2004, Williams reported that D.R.G. was guarded and sullen. (R. at 231.) Clifton reported that D.R.G. experienced

---

[1]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

extreme anxiety and panic when faced with unfamiliar surroundings and/or crowded environments. (R. at 231.) This was verified by D.R.G. when interviewed individually. (R. at 231.) Williams diagnosed social phobia with anxiety, panic episodes generalized and moderate social isolation. (R. at 231.) Williams assessed a then-current GAF score of 51 with a past GAF score of 66. (R. at 231.)

On February 24, 2003, Dr. Linda R. Thompson, M.D., a psychiatrist, diagnosed panic disorder with agoraphobia, obsessive-compulsive disorder features and dysthymic disorder features. (R. at 186.) She assessed D.R.G.'s GAF score at 40.[2] (R. at 186.) In May 2003, Clifton reported that D.R.G. had discontinued Zoloft and Phenegran due to irritability. (R. at 179.) Dr. Thompson diagnosed panic disorder with agoraphobia, obsessive-compulsive disorder and dysthymic disorder. (R. at 179.)

On March 17, 2003, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated D.R.G. (R. at 202-06.) Lanthron reported that D.R.G. had "obviously been somewhat coached." (R. at 202.) D.R.G. stated that the reason for his disability application was "whenever I go to school, I get hot and break out in a sweat (looking at his mother) and I can't function in public school. I have complicated migraine and mom took me out." (R. at 202-03.) Lanthorn reported that D.R.G. was able to respond appropriately to everyday practical situations suggesting adequate usage to common sense. (R. at 203.) D.R.G. was able to attend and concentrate, could answer questions, follow directions and complete tasks. (R. at 203.) Both Clifton and

---

[2] A GAF of 31-40 indicates that the individual has "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood...." DSM-IV at 32.

-7-

D.R.G. reported that D.R.G. experienced panic attacks. (R. at 204.) Lanthorn reported that "it was difficult to ascertain exactly what his symptoms were and if panic attacks exists." (R. at 204.) D.R.G. reported that he had "quite a few friends and that where he went everybody was his friend." (R. at 204.) Clifton, however, reported that kids picked on D.R.G. (R. at 204.) Lanthorn reported that D.R.G. related appropriately with him and that he should be able to relate adequately with others. (R. at 205.) Lanthorn diagnosed rule out panic disorder without agoraphobia and assessed a GAF score of 60. (R. at 205.)

Lanthorn reported that D.R.G. was able to understand and remember without difficulty and that he was able to obtain, concentrate and follow simple instructions. (R. at 205.) Social interaction appeared to be fair. (R. at 205.) Lanthorn reported that general adaption skills may be somewhat hindered, which may relate to his home situation. (R. at 205.)

In April 2003, Dr. Richard M. Surrusco, M.D., a state agency physician, and Julie Jennings, Ph.D., a state agency psychologist, indicated that D.R.G.'s mental impairment or combination of impairments were severe, but did not meet or equal a listed impairment. (R. at 207-12.) They also indicated that D.R.G. did not suffer from a severe physical impairment. (R. at 207.) They indicated that he had a less than marked limitation in acquiring and using information and no limitation in attending and completing tasks, in interacting and relating with others, in moving about and manipulating objects, in caring for self or in health and physical well-being. (R. at 209-10.) This assessment was affirmed by Dr. F. Joseph Duckwall, M.D., a state agency physician, and Eugenie Hamilton, Ph.D., a state agency psychologist. (R. at

208.)

On September 12, 2003, D.R.G. presented for an initial behavioral health consultation with a behavioral health consultant.[3] (R. at 217-19.) Clifton reported that she had lost control of D.R.G. (R. at 217.) She also reported that stress caused D.R.G.'s migraines. (R. at 217.) D.R.G.'s mood was irritable, his affect and thought processes were normal and his memory was intact. (R. at 218.) It was reported that D.R.G. acted out at home, but didwell at school. (R. at 218.) D.R.G. was diagnosed with oppositional defiant disorder and anxiety disorder. (R. at 218.) He was assessed a then-current GAF score of 70 with a past score of 70.[4] (R. at 218.)

## *III. Analysis*

A child is considered disabled for SSI purposes only if the child suffers from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less than 12 months. 42 U.S.C.A. § 1382c(a)(3)(C)(i) (West 2003 & Supp. 2005). The Commissioner uses a three-step process in evaluating children's SSI claims. *See* 20 C.F.R. § 416.924 (2005). This process requires the Commissioner to consider, in order, whether the child 1) is engaged in substantial gainful employment; 2) has a severe impairment; and 3) has an impairment that meets or equals the requirements of a listed impairment. *See* 20 C.F.R. § 416.924. As with the process for adults, if the

[3]The consultant's name is not legible. (R. at 219.)

[4]A GAF of 70 indicates that the individual has "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but [is] generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

Commissioner finds conclusively that a child is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.924. Thus, under the applicable regulations, an ALJ may find a child to be disabled within the meaning of the Social Security Act only if he finds that the child has a severe impairment or combination of impairments that meets or equals an impairment listed in Appendix 1. *See* 20 C.F.R. § 416.924(d)(1) (2005).

By decision dated February 20, 2004, the ALJ denied Clifton's claim. (R. at 16-21.) The ALJ found that D.R.G. had never performed any substantial gainful activity. (R. at 21.) The ALJ found that the medical evidence established that D.R.G. suffered from severe impairments, namely asthma and social phobia with anxiety and panic episodes, generalized, but he found that D.R.G. did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.) The ALJ also found that the combination of medically determinable physical or mental impairments did not result in marked and severe functional limitations. (R. at 21.) Therefore, the ALJ concluded that D.R.G. was not under a disability as defined by the Act and was not eligible for children's SSI benefits. (R. at 21.) *See* 20 C.F.R. § 416.924(d)(2) (2005); *see also* 42 U.S.C.A. § 1382c(a)(3)(C).

In her brief, Clifton argues that the ALJ erred in failing to find that D.R.G.'s condition met or equaled the listed impairment for anxiety disorders found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.06. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-9.) Clifton also argues that the ALJ erred in failing to find that D.R.G.'s condition met or equaled the listed

-10-

impairment for asthma found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 103.03. (Plaintiff's Brief at 9-11.)

As stated above, the court must determine if there is substantial evidence in the record to support the ALJ's decision that D.R.G. was not under a disability as defined in the Act. If substantial evidence exists to support this finding, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *See Laws*, 368 F.2d at 642. Also, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). "Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if [her] decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456.

I reject Clifton's argument that the ALJ erred by finding that D.R.G.'s anxiety did not meet or equal a listed impairment. (Plaintiff's Brief 6-9.) To meet or equal the listed impairment for anxiety related disorders found at § 112.06, a claimant must show by medically documented findings that he suffers from at least one of the following:

    A.    Excessive anxiety manifested when the child is separated, or separation is threatened, from a parent or parent surrogate;

    B.    Excessive and persistent avoidance of strangers;

    C.    Persistent unrealistic or excessive anxiety and worry

-11-

(apprehensive expectation), accompanied by motor tension, autonomic hyperactivity or vigilance and scanning;

D. A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation;

E. Recurrent severe panic attacks, manifested by a sudden unpredictable onset of intense apprehension, fear or terror, often with a sense of impending doom, occurring on the average of at least once a week;

F. Recurrent obsessions or compulsions which are a source of marked distress; or

G. Recurrent and intrusive recollections of a traumatic experience, including dreams, which are a source of marked distress.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.06(A) (2005). A claimant, age three to attainment of age 18, also must show that his condition results in at least two of the following: marked impairment in age-appropriate cognitive/communicative functions; marked impairment in age-appropriate social functioning; marked impairment in age-appropriate personal functioning or marked difficulties in maintaining concentration, persistence or pace. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.02(B)(2), 112.06(B) (2005). While Dr. Thompson noted a mildly depressed mood and anxious affect and assessed a GAF score of 40, the ALJ found that her opinion was inconsistent with the record as a whole. (R. at 20, 186.) The ALJ found that Dr. Thompson's opinion was inconsistent with her own mental status examinations, which revealed intact memory, orientation, thought process and speech, no hallucinations, paranoia or suicidal or homicidal impulses and good judgment and insight. (R. at 20, 179, 188.) Dr. Thompson's opinion was also inconsistent with the past and current

GAF score of 70 assigned by a therapist in September 2003, indicating only mild symptoms. (R. at 217-19.)

In addition, Dr. Thompson's opinion was inconsistent with Lanthorn's evaluation, during which Lanthorn noted that D.R.G's explanations of his problems had "obviously been somewhat coached," as they were related in a somewhat programmed manner and D.R.G. often looked to his mother for validation. (R. at 202-03.) Lanthorn's evaluation was normal, revealing intact memory processes, appropriate responses to everyday practical situations, good concentration and task completion and an adequate ability to relate to others. (R. at 203-05.) D.R.G.'s activities of daily living were extensive, and included going out to eat with his mother, going to the park to see friends, skateboarding, drawing, watching television and playing video games. (R. at 204.) While Clifton reported that D.R.G. was picked on at his former school, D.R.G. contradicted her report by stating that he had "quite a few friends" and that "where he went everybody was his friend." (R. at 204.) Dr. Thompson's opinion was also inconsistent with the opinion of Schacht, who testified that the record did not support Clifton's allegations regarding the severity of D.R.G.'s condition. (R. at 265.) Schacht testified that D.R.G. was noncompliant with medication and that there was no indication that D.R.G.'s impairment would last for 12 months if treated. (R. at 274.)

Finally, Dr. Thompson's opinion was inconsistent with D.R.G.'s high academic achievement and reports from his teachers. (R. at 91-93, 197-201, 220, 224-27.) D.R.G.'s fifth-grade teacher noted that D.R.G. had no difficulty attending to and completing tasks or with moving about and manipulating objects, he had an excellent

report card and he was a member of the principal's honor roll. (R. at 198-99, 225, 227.) School records also show that D.R.G. had an excellent rating with work habits and social traits. (R. at 221.) Furthermore, Williams placed no functional limitations on D.R.G. (R. at 181.) Therefore, I find that substantial evidence supports the ALJ's finding that D.R.G.'s condition did not meet or equal the requirements of § 112.06.

I also reject Clifton's argument that the ALJ erred by finding that D.R.G.'s asthma did not meet or equal a listed impairment. (Plaintiff's Brief at 9-11.) To meet or equal the listed impairment for asthma found at § 103.03, a claimant must show that he suffers from asthma with:

- A.  $FEV_1$ equal to or less than the value specified in table I of 103.02A; ...

- B.  Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks; ...

- C.  Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following: (1) Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or (2) Short courses of corticosteroids that average more than five days per month for at least three months during a 12-month period; [or]

- D.  Growth impairment as described under the criteria in 100.00.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.3 (2005.)

While D.R.G. carries a diagnosis of asthma, he has failed to identify medical findings sufficient to satisfy any of the listing's criteria. Dr. Bland reviewed all of the medical evidence and concluded that D.R.G.'s respiratory impairment did not meet or equal any of the listed impairments. (R. at 262-63.) Therefore, I find that substantial evidence supports the ALJ's finding that D.R.G.'s condition did not meet or equal the requirements of § 103.03.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence supports the ALJ's finding that D.R.G.'s impairment did not meet or equal the listed impairment for anxiety related disorders found at § 112.06;

2. Substantial evidence supports the ALJ's finding that D.R.G.'s impairment did not meet or equal the listed impairment for asthma found at § 103.03;

3. Substantial evidence supports the ALJ's finding that D.R.G. was not disabled under the Act and was not entitled to benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Clifton's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 22nd day of March 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE